# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Ian H. Levin | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 8096 | **DATE** | 6/5/2002 |
| **CASE TITLE** | Mark Abrams vs. Jo Anne B. Barnhart | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] **Enter memorandum opinion and order on plaintiff's motion for summary judgment or remand. Plaintiff's motion for summary judgment insofar as it request a remand of the ALJ's decision is granted. Accordingly, the cause is remanded to the Commissioner for further proceedings consistent with this opinion. Judgment is entered pursuant to Rule 58 F.R.C.P.**

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | Document Number |
|---|---|---|---|---|
| | No notices required, advised in open court. | | 2 number of notices | |
| | No notices required. | | | |
| ✓ | Notices mailed by judge's staff. | | JUN 0 6 2002 date docketed | 17 |
| | Notified counsel by telephone. | | | |
| | Docketing to mail notices. | | docketing deputy initials | |
| | Mail AO 450 form. | U.S. DISTRICT COURT CLERK | | |
| | Copy to judge/magistrate judge. | 02 JUN -5 PM 5:09 | 6/5/2002 date mailed notice | |
| SM courtroom deputy's initials | | Date/time received in central Clerk's Office | SM mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

MARK ABRAMS, a minor by his mother )
and next friend, Donna Abrams, )
)
    Plaintiff, ) Case No. 01 C 8096
v. )
) Magistrate Judge Ian H. Levin
JO ANNE B. BARNHART, Commissioner )
of the Social Security Administration, )
)
    Defendant. )

**DOCKETED**
**JUN 0 6 2002**

## MEMORANDUM OPINION AND ORDER

Before the court is an appeal from the Social Security Administration's finding that the Plaintiff was not disabled and thus not entitled to statutory Child's Supplemental Security Income benefits.

## FACTS

*Plaintiff's Background*

Plaintiff was born on October 9, 1986 and was 12 years old at the time of the hearing. (R. 22.) Plaintiff, in this case, has a learning disability; rather than any significant medical problems. (R. 47, 125-26.) Specifically, Plaintiff is unable to perform at his expected grade level and was in special education classes. (R. 71, 47.) At the time of the hearing, Plaintiff had completed the sixth grade and was due to enter the seventh grade; however, he was only reading at the third grade level. (R. 47.) Plaintiff was a cooperative student and got along well with his peers and teachers. (R. 31-32, 35-36.) Moreover, while Plaintiff could carry on a conversation and had good verbal skills, he had short-term memory problems that interfered with his ability to perform at grade level. (R. 74.)

Plaintiff's brief delineates the history of Plaintiff's learning disability (e.g., problems with

memory, attention span, concentration, on-task behavior in class, working independently of teacher supervision as well as problems understanding and completing assignments on time) (R. 72, 74, 93) and the special education services he received (e.g., small group reading setting, help from a sibling with his homework, 1500 minutes of special education per week during the 1995-1996 school year, and 1180 minutes of special education per week in 1997). (R. 40-41, 74, 141, 146-47.) Plaintiff was essentially unable to function in a regular classroom and required the services of a special education teacher in many areas. (R. 119, 123, 143.)

In October, 1998, an Individualized Education Program ("IEP") was prepared that indicated that Plaintiff was performing at about a second grade level (about three years below his grade expectancy) when Plaintiff was in the sixth grade. (R. 118.) Specifically, Plaintiff was performing at a second to third grade level in language arts and mathematics, and was at a third grade reading level. (R. 120-21.) The IEP also indicated that Plaintiff was having difficulty following directions and processed information slowly. (R. 122.) Special education services were required in language arts, English, mathematics, science, and social science. (R. 119, 123.)

Plaintiff continued to read at a third grade level during the 1998-99 school year. (R. 130-31.) He got mostly C's on his report card, and according to his report card, Plaintiff was performing at a fourth grade level in math, and at his grade level in science and social science. (R. 131.) Plaintiff's higher level of performance at that time was not clear to Plaintiff's mother despite his teacher's attempt to explain the situation. (R. 41-42.) Despite a goal of 25 books to be read for the school year, Plaintiff had only read three books (by the end of the third quarter). (R. 132.)

*Psychological Evaluations*

Dr. Blackman, a psychiatrist, testified as the Medical Advisor ("MA") at the administrative

2

hearing. (R. 49.) Dr. Blackman testified with respect to Plaintiff's WISC-III (Weschler Intelligence Test for Children) test scores completed in June 1995 (verbal IQ -75, performance IQ-70, and full scale IQ-70) and WISC-R test scores completed in November 1995 (verbal IQ-77, performance IQ-80 and full scale IQ-76). (R. 50, 100.) Dr. Blackman stated that Plaintiff's June 1995 test scores put Plaintiff in the mildly mentally retarded range (R. 50) and his November 1995 test scores put Plaintiff in the borderline mentally retarded range. (R. 50.) Dr. Blackman testified that he assumed Plaintiff had a borderline IQ. (R. 50.)

Dr. Blackman testified that Plaintiff's only medically identifiable impairment was borderline intellectual functioning. (R. 50.) Dr. Blackman stated that Plaintiff had a marked limitation in cognitive functioning (as indicated by his third grade reading level and fourth grade math level, while in the sixth grade). (R. 51.) Dr. Blackman did not diagnose Plaintiff as having a learning disability, but thought he should be performing at a higher level. (R. 51.)

Dr. Blackman testified that Plaintiff did not meet or equal the listing for cognitive impairments because, despite Plaintiff's low IQ scores, he did not believe that Plaintiff's cognitive impairment was documented by medical findings. (R. 51-53.) Dr. Blackman, however, concluded that Plaintiff had marked impairments in cognitive/communicative functioning. Dr. Blackman also stated that Plaintiff had problems in concentration and many times failed to complete tasks in a timely manner. Dr. Blackman, however, could not relate those problems to a medical cause. Thus, Dr. Blackman's concern was that there was no precise medical evidence to support the problems Plaintiff was experiencing. (R. 55.) Consequently, Dr. Blackman determined that Plaintiff's

problems did not meet or equal all of the required criteria of the organic mental impairments listing.[1] (R. 53-54.) 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 112.02.

On January 30, 1996, Helen Appleton, Ph.D., a consultative psychologist, completed an individualized assessment and reviewed Plaintiff's history and determined that the WISC-III was a more valid test than the WISC-R because it is based on current norms (Plaintiff's WISC-III test scores were lower than his WISC-R scores). (R. 100.) Dr. Appleton described Plaintiff as having a moderate limitation in cognitive development. (R. 100.) In addition, Ms. Appleton found that Plaintiff had a moderate limitation in concentration, persistence, pace, paying attention, staying on a task, and completing tasks. (R. 102.)

Two other consultative psychological examinations were conducted on June 27, 1995 and November 8, 1995. (R. 106, 114-15.)

### *The ALJ's Findings*

The Administrative Law Judge ("ALJ") determined that Plaintiff has never performed substantial gainful activity. (R. 21.) The ALJ found that Plaintiff has borderline intellectual functioning and a learning disorder characterized by short-term memory and auditory processing deficits, which are "severe" as defined by 20 C.F.R. § 416.924(c). (R. 21.)

The ALJ further determined that Plaintiff's impairments are not of a severity which medically meets or equals the severity of any impairment listed in Part B of Appendix 1 to Subpart P, 20 C.F.R. Part 404 ("Listing of Impairments"). (R. 21.) The ALJ also found that Plaintiff's impairments were not functionally equivalent in severity to any listed impairment. (R. 21.)

---

[1] In addition, Dr. Blackman determined that Plaintiff's problems or impairments did not functionally equal any listing. (R. 55.)

4

The ALJ determined that Plaintiff does not have two "marked" limitations or one "extreme" limitation of functioning. (R. 21.) The ALJ, thus, concluded that Plaintiff had a marked limitation in cognitive/communicative functioning, but that he did not have marked or extreme limitations in any other area. (R. 19-20.)

In addition, the ALJ noted that subjective complaints are considered credible only to the extent that they are supported by the record evidence. (R. 21.) Consequently, Plaintiff's subjective complaints were not credible because the medical evidence did not support such a finding. (R. 21.)

Accordingly, the ALJ found that Plaintiff was not disabled under the terms of the Social Security Act. (R. 21.)

## ISSUES

The threshold issue herein is whether the cause should be reversed or remanded for reconsideration under final regulations that became effective after the ALJ's July 29, 1999 decision.

In August 1996, Congress enacted Pub.L. 104-193, the Personal Responsibility and Work Opportunity Reconciliation Act of 1966 ("PRWORA"), which modified certain portions of the Social Security Act. Among other provisions, the PRWORA set forth a new standard for determining whether a child is disabled. *Hickman v. Apfel*, 187 F.3d 683, 685 n.2 (7th Cir. 1999). In 1997, the Social Security Administration ("SSA") promulgated regulations to conform its regulations to the statutory standard under the PRWORA. *Id.*; 65 Fed. Reg. 54747 (Sept. 11, 2000). The PRWORA required SSA to make "significant changes" in the manner in which SSA evaluates childhood disability claims. 65 Fed. Reg. 54747.

The 1997 regulations were interim final rules. 65 Fed. Reg. 54747. Later, in September 2000, SSA published revised final rules. *Id.*

5

The ALJ's decision was issued on July 29, 1999. (R. 19.) Thus, the interim rules were in effect at that time. The revised final rules became effective January 2, 2001. 65 Fed. Reg. 54747. Thus, the revised rules had become effective by the time of the Appeals Council's decision, in August 2001 (R. 5) and are in effect currently. The Appeals Council applied these revised final rules in making its decision. (R. 5.)

The Commissioner relies on a portion of the regulatory language used by the SSA, in contending that this case should not be remanded for reconsideration under the revised final rules (Def.'s Mem. at 9.) The subject regulatory provision states as follows:

> When the final rules become effective, we will apply them to new applications filed on or after the effective date of the rules. We will also apply them to the entire period at issue for claims that are pending at any stage of our administrative review process, including claims that are pending administrative review after remand from a Federal court. With respect to claims in which we have made a final decision, and that are pending judicial review in Federal court, <u>we expect</u> that the court's review of the Commissioner's final decision would be made in accordance with the rules in effect at the time of the final decision. . . . In those cases decided by a court after the effective date of the rules, where the court reverses the Commissioner's final decision and remands the case for further administrative proceedings, on remand, we will apply the provisions of these final rules to the entire period at issue in the claim.

65 Fed. Reg. 54751 (emphasis added).

Thus, the Agency's comments specifically relied on by the Commissioner merely express SSA's <u>expectation</u> as to the law the court will apply. Respectfully, these comments cannot and do not purport to mandate court application of the interim rules, as the Commissioner's argument(s) might suggest. (Def.'s Mem. at 9.)

In *Hickman, supra*, 187 F.3d at 687, the Seventh Circuit concluded that Social Security Act amendments applied to cases, like this one, in which a request for judicial review was pending when the statute was amended. In so doing, the Seventh Circuit relied on *Brown v. Callahan,* 120 F.3d

1133 (10th Cir. 1997), and *Jamerson v. Chater,* 112 F.3d 1064 (9th Cir. 1997). *Hickman,* 187 F.3d at 687. Both of these cases relied on the language of the PRWORA in determining that the PRWORA applied to cases which, while originally decided under prior legal provisions, were pending on judicial review after the effective date of the PRWORA. *Brown,* 120 F.3d at 1135, citing Pub L. No. 104-193, 110 Stat. 2105, §211(d); *Jamerson v. Chater,* 112 F.3d at 1065 n.1 (9th Cir. 1997). Section 211(d) of the PRWORA provides that the amendments it makes in the manner of evaluating children's disability claims apply to all cases which have not been finally adjudicated as of the effective date of the Act, August 22, 1996; Section 211(d) defines cases which are not finally adjudicated to include cases in which a request for either administrative or judicial review is pending. *Brown,* 120 F.3d at 1135; *Jamerson,* 112 F.3d at 1065 n.1.

Despite SSA's statement of a contrary expectation, 65 Fed. Reg. 54751, it is far more consistent with statutory intent, and case interpretation under the Act, to apply all aspects of the new statutory legal standards, including the revised final regulations, to all cases in which a request for review, judicial or administrative, is pending after the effective date.[2]

The finality concerns raised by the Commissioner (Def.'s Mem. at 9) possess superficial appeal. However, the subject statutory scheme, and cases thereunder, evince that finality is not the pivotal concern. The PRWORA amendments to the Social Security Act were expressly made applicable to any case not finally adjudicated when the PRWORA became effective, including cases

---

[2]SSA promulgated the new regulations to comply with the Congressional directive to adopt regulations to reflect the changed intent of Congress, as demonstrated by the PRWORA. *See, generally, Colon v. Apfel,* 133 F.Supp.2d 330, 339 (S.D.N.Y. 2001), citing H.R. Conf. Rep. No. 725, 104th Cong. 2d Sess. 328 (1996), 1996 U.S.C.C.A.N. 2649, 2716.

7

pending on administrative or judicial review.³ Pub.L. No. 104-193, 110 Stat. 2105, §211(d).

*Roelandt v. Apfel,* 125 F.Supp. 2d 1138, 1147-48 (S.D. Iowa 2001) is directly instructive in Plaintiff's favor on this issue. That case also involved an appeal of an SSA finding that a child was not disabled and thus not entitled to Supplemental Security Income benefits. In *Roelandt,* exactly like here, the ALJ's decision was rendered prior to the effective date of the revised final regulations in question here (and during the pendency of the interim rules), but the court's decision on appeal was rendered after the revised final rules effective date of January 2, 2001. Tellingly, the Court, in *Roelandt,* applied the revised final rules in making its decision.

The Commissioner also contends that the revised final rules do not significantly change the standards for childhood disability. These revised final rules do make changes that are significant and relevant to this case. In particular, the germane difference is in the domains of functioning which must be considered in determining whether the claimant's condition is functionally equivalent to the listings. *See* 20 C.F.R. § 416.926 a(b)(1) (1998); 20 C.F.R. § 416.926 a(b)(1) (2001). A requisite two of the six functional domains in the current rules are relevant in this case; namely, how well the claimant child can (1) acquire and use information and (2) attend to and complete tasks.⁴

Upon review, this court is not in a position, and is unable, to fairly determine the impact of the evidence presented below, when applied to and analyzed under the domains relevant under the revised final regulations. A remand, accordingly, is required.

---

³Too, in the very regulation the Commissioner here cites, SSA, itself, has expressed its intent to apply the revised final regulations, rather than the interim rules, to any case pending before it on or after the final regulations' effective date of January 2, 2001, including cases remanded by a federal court.

⁴As is pertinent here, the parties implicitly concur that the Plaintiff must have a "marked" level of impairment in two of the listed domains of functioning. 20 C.F.R. §416.926(a).

## CONCLUSION

In view of the foregoing, the Court grants Plaintiff's Motion for Summary Judgment insofar as it requests a remand. Accordingly, the cause is remanded to the Commissioner for further proceedings consistent with this opinion.[5]

ENTER:

*/s/ Ian H. Levin/*

IAN H. LEVIN
**United States Magistrate Judge**

**Dated: June 5, 2002**

---

[5] In light of the Court's ruling herein, it is deemed unnecessary to consider Plaintiff's other arguments raised herein.